**FOX ROTHSCHILD LLP**
By: Ely Goldin, Esq.
      Ernest E. Badway, Esq.
75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068-1600
(973) 992-4800
EGoldin@foxrothschild.com
      - and -
**FOX ROTHSCHILD LLP**
By: W. Christian Moffitt, Esq.
10 Sentry Parkway, Suite 200
Post Office Box 3001
Blue Bell, Pennsylvania 19422
(610) 397-6509
*Attorneys for Plaintiff*
Protectmax, LLP

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| **PROTECTMAX, LLP,**<br><br>                        Plaintiff,<br><br>v.<br><br>**GARRI MILMAN** a/k/a GARIC MILMAN a/k/a GARRY WILMAN a/k/a GARRI MILNAN a/k/a GARRI ILMAN a/k/a GARRI ONILMAN a/k/a GARY MILMAN a/k/a GARRI I. ILMAN a/k/a GARI MILMAN a/k/a GARI MESH a/k/a GARRI MILMOUR a/k/a GIGARRI MILMAN; **SVETLANA P. MILMAN** a/k/a SVETLANA F. PLOSKINA; **CNN USA TRADING, INC.**; **EASY LEASING, LLC** a/k/a EZ LEASING; **EASY LEASING OF MIAMI, INC.**; **EASY TESTING INCORPORATED**; **EASY TESTING MEDICAL, PC**; **IMMIGRATION SERVICES FOR NEW AMERICANS, INC.**; **BAY HEALTH CLUB, INC.**; **2264 65TH STREET PROPERTIES, LLC**; **FORTUNA ENTERTAINMENT OF NY, LTD**; **JOHN DOE # 1** THROUGH # 5; and **JANE DOE # 1**<br><br>                        Defendants. | CIVIL ACTION NO.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

LN1 1237535v2 09/27/11

Plaintiff, Protectmax, LLP, by and through its undersigned counsel and pursuant to Fed.R.Civ.P. 8(a)(2), files this Complaint against the defendants herein and in support of the Complaint avers as follows:

## THE PARTIES

1. Plaintiff **Protectmax, LLP** ("Plaintiff" or "PMX") is a limited liability partnership organized and existing under the laws of England, located at Suite 124 A, Corporate House, 1100 Parkway, Whiteley, Hampshire PO15 7AB, England, Great Britain.

2. Plaintiff brings this action in its own right and as assignee of certain rights held by Tanker International, Limited ("Tanker"), a company organized under the laws of New Zealand with an address of 369 Queen Street, Level 5, Auckland, New Zealand. The assignment is attached herewith as Exhibit "A".

3. Defendant **Garri Milman** a/k/a Garry Wilman a/k/a Garri Millman a/k/a Garri Milnan a/k/a Garri Ilman a/k/a Garri Onilman a/k/a Gary Milman a/k/a Garri I. Ilman a/k/a Gari Milman a/k/a Gari Mesh a/k/a Garri Milmour a/k/a Gigarri Milman ("Milman"), is a New York citizen residing at 2701 Arkansas Drive, Brooklyn, NY 11234.

4. Defendant **Svetlana P. Milman a/k/a Svetlana F. Ploskina** ("Svetlana"), is a New York citizen residing at 2701 Arkansas Drive, Brooklyn, NY 11234.

5. Milman and Svetlana are husband and wife.

6. Defendant **CNN USA Trading, Inc**. ("CNN"), is a New York corporation with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

7. Defendant **Easy Leasing, LLC** a/k/a EZ Leasing ("Easy Leasing") is a New York limited liability company with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

8. Alternatively, Easy Leasing (or EZ Leasing) is a registered and/or unregistered fictitious name used by Defendant Milman in connection with his business activities and the unlawful conduct described herein.

9. Defendant **Easy Leasing of Miami, Inc.** ("Easy Leasing Miami"), is, upon information and belief, a Florida corporation with a principal place of business at 18090 Collins Avenue, Suite T-15, Sunny Isles, FL 33160.

10. Defendant **Easy Testing Incorporated** ("Easy Testing"), is a New York corporation with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

11. Defendant **Easy Testing Medical, PC** ("Easy Medical"), is a New York corporation with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

12. Defendant **Immigration Services for New Americans, Inc.** ("ISNA"), is a New York corporation with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

13. Defendant **Bay Health Club, Inc.** ("BHC"), is a New York corporation with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

14. Defendant **2264 65th Street Properties, LLC** ("65 Properties"), is a New York Limited Liability Company with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

15. Defendant **Fortuna Entertainment of NY, LTD** ("Fortuna"), is a New York corporation with a principal place of business at 2264 65th Street, Brooklyn, NY 11204.

16. CNN, Easy Leasing, Easy Leasing Miami, Easy Testing, Easy Medical, ISNA, BHC, 65 Properties and Fortuna are referred to, collectively, as the "Milman Businesses."

17. Defendants **John Doe # 1 through #5** (the "John Doe Defendants"), are persons and/or business entities that aided, abetted and/or participated in the events complained of herein but

whose identities are as of yet unknown to Plaintiff. Plaintiff respectfully reserves the right to amend the caption and identify the John Doe Defendants by name once their identities have been ascertained through discovery.

18. Defendant **Jane Doe # 1** ("Jane Doe"), is Milman's mother-in-law who is, upon information and belief, is a citizen of New York or Florida, and whose identity and exact whereabouts are currently unknown. Plaintiff respectfully reserves the right to amend the caption and identify Jane Doe by name once her identity and place of residence has been ascertained through discovery.

## JURISDICTION AND VENUE

19. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1332 inasmuch as this action involves a controversy between PMX, an English company and Defendants, who are residents and/or citizens of jurisdictions other than the State of New Jersey. Furthermore, to the extent that PMX is pursuing claims acquired by assignment, said claims were assigned by an entity who is diverse with all Defendants and whose presence in this case would not impair this Court's subject matter jurisdiction had the assignments not been made.

20. This Court has personal jurisdiction over each of the Defendants. Each of the Defendants has extensive and ongoing contacts with the State of New Jersey and actively trade and/or engage in business within the State of New Jersey.

21. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and Defendants have sufficient contacts with this District such that defendants may be found here.

## OPERATIVE FACTS

22. Milman is an automobile dealer who operates Easy Leasing, an online automobile dealership that maintains a website at URL: http://www.easyleasingdeals.com.

23. In or around 2009, Plaintiff contacted Milman regarding the potential purchase of certain Toyota and Lexus automobiles in the United States for resale abroad.

24. Milman, who claimed to have extensive connections in the automobile industry, agreed to locate, acquire and ship said automobiles to Plaintiff for resale abroad.

25. Milman required payment up front for each automobile ordered including, without limitation, all shipping charges and other expenses associated with the acquisition and shipment of the said automobiles.

26. Between 2009 and June 21, 2010, Plaintiff Protectmax and Plaintiff's assignor, Tanker, advanced approximately $1,000,000 by wire transfer to Milman, Easy Leasing and/or CNN directed to Defendants' financial institutions in the State of New Jersey.

27. Milman used Plaintiff's funds to acquire and ship automobiles sought by Plaintiff.

28. Upon information and belief, Milman acquired the automobiles from dealerships in the State of New Jersey including, without limitation, Ray Catena Motors, arranged for the export of the automobiles through customers brokers and/or expeditors located in the State of New Jersey and shipped all vehicles to Plaintiff via ports located in the State of New Jersey including, without limitation, the Port of Newark.

29. Pursuant to the parties' agreement, all logistics associated with export including, without limitation, customs clearance, were handled by Milman and/or the Milman Businesses.

30. The moneys advanced by Plaintiff included shipping and/or export charges quoted by Milman and/or the Milman Businesses.

31. On or around June 2011, Plaintiff notified Milman of a $250,000 discrepancy between the funds advanced by Plaintiff and the automobiles actually shipped by Milman.

32. When confronted with the discrepancy, Milman informed Plaintiff that his partner and general manager "Nika" had abandoned Easy Leasing and misappropriated Plaintiff's moneys.

33. Milman claimed that he was unaware of the misappropriation, that he too had been victimized by "Nika" and was taking active steps to recover the misappropriated funds.

34. Milman further informed Plaintiff that the missing funds were his responsibility and that he would either personally repay the missing funds or further discount every car purchased by Plaintiff.

35. Based on Milman's representations, Plaintiff agreed to continue its business relationship with Milman and/or the Milman Businesses.

36. As of June 21, 2010, the balance owed by Milman and/or the Milman Businesses to Plaintiff was fixed at USD $247,520.

37. Between June 21, 2010 and February 2011, Plaintiff continued to purchase automobiles from the Milman Businesses and each purchase included a discount of approximately $2,500 to $7,500 per automobile, so as to reduce the prior indebtedness.

38. By reason of the discounts, the balance owed as of January 21, 2011 was reduced by $77,000 to $170,520.

39. Then, Milman did it again.

40. In April 2011, Milman again failed to ship automobiles which had been ordered between January 21, 2011 and April 2011 and for which payment was advanced.

41. The discrepancy between money actually transferred by Plaintiff during this time period and the value of cars actually shipped to Plaintiff during this time period is $174,044.

LN1 1237535v2 09/27/11

42. Combined with the pre-existing indebtedness of $170,520 which Milman had been gradually reducing, the total amount misappropriated by Milman grew to $344,564.

43. For weeks after the said funds were transferred, Milman avoided and/or ignored Plaintiff's telephone calls.

44. On those rare instances where Plaintiff was able to reach Milman, he informed Plaintiff that the delay in shipment was merely a temporary hiccup, occasioned by logistical problems, which statements were patently false and designed to lull Plaintiff into a false sense of security.

45. In or around May 2011, when it became evident that the cars had not been shipped and Plaintiff's money had not been accounted for, Plaintiff contacted Milman again to demand a meeting and an explanation of what happened to the money transferred by Plaintiff.

46. Milman informed Plaintiff that the "Nika" departure had left him in a weakened financial position, that the Easy Leasing business was not as profitable as he had hoped and that he was forced to use a portion of Plaintiff's funds to make investments in and/or otherwise grow the other Milman Businesses.

47. In essence, therefore, Milman used moneys that were entrusted to him pursuant to an agency relationship to invest in and/or start other businesses which he set up for his own personal gain and/or for the benefit of the other Defendants herein.

48. Plaintiff made demand upon Milman to return the missing funds.

49. Shortly after said demand was made, Plaintiff learned that certain cars that were supposedly shipped by Milman in 2011 via the Port of Elizabeth, New Jersey had been arrested in the port of Bremenhaven, Germany, because Milman and/or the Milman Businesses failed to pay

shipping charges to TRT International, Ltd. ("TRT") a Newark, NJ based international freight forwarder.

50. Plaintiff contacted Milman and demanded that Milman and/or the Milman businesses immediately satisfy their obligations to TRT and make arrangements for the immediate release of the arrested vehicles. After a delay of several weeks, Milman failed to pay TRT and Plaintiff was forced to pay an additional $130,000 for the release of automobiles that had already been purchased and fully paid for.

51. Plaintiff again confronted Milman regarding the discrepancy and failure to deliver automobiles as promised. Milman indicated that he believed the other Milman Businesses including, without limitation, Easy Testing, a mobile diagnostic testing business, would soon be profitable and that Plaintiff's debt would be repaid in full

52. Milman requested that Plaintiff forbear from taking any action with regard to the discrepancy and indicated that he was in the process of liquidating certain personal property, including, without limitation, multi-million dollar personal residence in Brooklyn, New York.

53. As a sign of good faith, Milman repaid $20,000 as against the outstanding indebtedness and promised that the rest of the funds would be forthcoming shortly.

54. Plaintiff again gave Milman the benefit of the doubt and an opportunity to make good on the misappropriated funds.

55. Despite promises to the contrary, as of this date, Milman has made no effort to satisfy the indebtedness and/or return the misappropriated funds.

56. Subsequently, Plaintiff contacted TRT, the Newark-based shipping company, to determine whether said company had any knowledge of how and why Plaintiff's funds were misappropriated.

57. Oleg Mitnik, TRT's owner, explained that TRT provides automobile "financing" for Milman, EZ Leasing and CNN Trading. However, in reality, the services provided by TRT are not financing services. When Milman, EZ Leasing and CNN Trading received orders for automobiles, they did not use Plaintiff's funds to actually acquire the automobiles.

58. Instead, they requested that TRT purchase the requested vehicles with TRT's own funds and then ship the vehicles abroad for re-sale. TRT is already in the business of acquiring and shipping vehicles abroad and they agreed to acquire and ship the vehicles purely as an accommodation to the defendants. According to TRT, if Plaintiff had declined to purchase the shipped vehicles, the automobiles would be sold to someone else without Defendant's involvement and without recourse to the Defendant.

59. So, in essence, Milman and his companies took Plaintiff's moneys, and delivered to Plaintiff cars that were purchased with someone else's funds and which were already earmarked for export and re-sale abroad. It was Milman's job to deliver moneys previously wired by Plaintiff to TRT to arrange for the release and delivery of the automobiles. Milman kept his ponzi-scheme going by releasing money in increments and then blaming delays occasioned by his non-payment on "hiccups" in transit.

60. It is believed and therefore averred, that Milman transferred the misappropriated funds to bank accounts maintained by the Milman Businesses and/or acquired assets including, without limitation, cars, with moneys misappropriated from Plaintiff.

61. As of this date, Defendants have failed to account for and/or repay moneys owed to Plaintiff.

62. As of this date, the total amount due and owing to Plaintiff is $454,654.

## COUNT I
## PLAINTIFF v. MILMAN, CNN AND EASY LEASING
## (BREACH OF FIDUCIARY DUTY)

63. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

64. At all times relevant hereto an agency relationship existed between Plaintiff and Defendants Milman, CNN and Easy Leasing.

65. Pursuant to the agency relationship, said Defendants owed Plaintiff a duty of loyalty and a duty of the utmost good faith and fair dealing.

66. By reason of the aforesaid, Defendants breached their fiduciary obligations by, <u>inter alia</u>, converting Plaintiff's assets, which were the subject of the agency relationship and by engaging in fraud and self-dealing.

67. The actions of Defendants Milman, CNN and Easy Leasing, are willful, wanton and outrageous and justify the award of punitive damages.

## COUNT II
## PLAINTIFF v. DEFENDANTS MILMAN, CNN AND EASY LEASING
## (CONVERSION)

68. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

69. By reason of the aforesaid, Defendants Milman, CNN and Easy Leasing, have unlawfully and without justification converted Plaintiff's property.

70. Plaintiff has suffered damages as a result of Defendants' conduct.

71. The actions of Defendants Milman, CNN and Easy Leasing are willful, wanton and outrageous and justify the award of punitive damages.

## COUNT III
## PLAINTIFF v. DEFENDANTS MILMAN, CNN AND EASY LEASING
## (BREACH OF CONTRACT)

72. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

73. By reason of the aforesaid, Defendants Milman, CNN and Easy Leasing, have unlawfully and without justification breached their contractual obligations to Plaintiff and/or Plaintiff's assignors.

74. At present, Defendants are indebted to Plaintiff in the amount of $454,654.

75. Despite demand and despite promises and assurances, Defendants have failed to repay the indebtedness.

76. In addition, by reason of the aforesaid, Plaintiff lost orders and revenue associated with vehicles that were supposed to be shipped abroad.

## COUNT IV
## PLAINTIFF v. ALL DEFENDANTS
## (UNJUST ENRICHMENT)

77. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

78. Upon information and belief, Milman used the misappropriated funds to acquire assets and/or pay debts owed by Milman and Svetlana.

79. Upon information and belief, Milman used the misappropriated funds to acquire assets for and/or pay debts owed by the John Doe Defendants and or Defendant Jane Doe.

80. Upon information and belief, Milman used the misappropriated assets to acquire, assets, pay debts and/or finance operations of the Milman Businesses.

81. By reason of the aforesaid, Defendants have been unjustly enriched to the great harm and detriment of the Plaintiff.

### COUNT V
### PLAINTIFF v. ALL DEFENDANTS
### (CONSTRUCTIVE TRUST)

82. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

83. Defendants' right, title and interest in the Milman Businesses, which were funded with moneys misappropriated from Plaintiff, and Defendants' right, title and interest in business inventory, personal property, real estate and/or other assets acquired or improved in whole, or in part, with misappropriated funds, are subject to a constructive trust and are held in favor of and for the benefit of Plaintiff.

### COUNT VI
### PLAINTIFF v. ALL DEFENDANTS
### (BREACH OF FIDUCIARY DUTIES TO CREDITORS)

84. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

85. To the extent that Milman, CNN and Easy Leasing were insolvent, Milman was obligated to operate said businesses for the benefit of its creditors including, without limitation, Plaintiff.

86. Upon information and belief, Milman treated Defendants more favorably that Plaintiff and made distributions and/or payments to Defendants in contravention of his legal obligations and for the purpose of frustrating Plaintiff's rights.

## COUNT VII
## PLAINTIFF v. DEFENDANT 65 PROPERTIES
## (FRAUDULENT CONVEYANCE)

87. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

88. Plaintiff believes and therefore avers that in 2010, Milman fraudulently transferred real estate located at 2264 65th Street, Brooklyn, NY to Defendant 65 Properties, for less than fair market value and with the intent to hinder and evade creditors including, without limitation, Plaintiff and/or Plaintiff's assignor.

## COUNT VIII
## PLAINTIFF v. DEFENDANTS MILMAN, THE MILMAN BUSINESSES
## AND JOHN DOE DEFENDANTS
## (ACTION TO PIERCE CORPORATE VEIL)

89. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

90. At all times relevant hereto, Defendant Milman was an active participant in the unlawful conducted alleged herein.

91. At all times relevant hereto, Defendant Milman was an agent (actual and/or ostensible) of the Milman Businesses.

92. To the extent that Defendant Milman carried out his business operations by and/or through the Milman Businesses, he is not entitled to the limited liability protections of the corporate form.

93. In addition, Plaintiff believes and therefore avers that Milman misused the corporate form and disregarded corporate formalities to a degree where the distinction between the individual and corporate defendants and the distinction between the corporate defendants inter se has been rendered meaningless, thereby rendering the entities a "sham" for purposes of this action.

94. Furthermore, it is believed that the Milman Businesses were grossly undercapitalized and that Milman used the Milman Businesses to siphon off misappropriated funds and conceal assets from creditors including, without limitation, the Plaintiff herein.

95. Consequently, Plaintiff seeks to pierce the corporate veil as to Milman, in his capacity as owner of the Milman Businesses, and as between the Milman Businesses, which are part of a combine operated by Milman and used for the unlawful purposes described herein.

## COUNT IX
## PLAINTIFF v. ALL DEFENDANTS
## (CIVIL CONSPIRACY)

96. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

97. By reason of the aforesaid, the Defendants – consisting of two or more persons – combined and/or agreed with malicious intent to engage in unlawful overt acts and/or achieve objections by unlawful means complained of herein to the great harm and detriment to the Plaintiff.

98. Plaintiff has suffered damage as a result of Defendants' conduct.

99. Defendants' actions are willful wanton and outrageous and justify the award of punitive damages.

## COUNT X
## PLAINTIFF v. ALL DEFENDANTS
## (COMMON LAW FRAUD)

100. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

101. Defendants Milman, CNN and EZ Leasing made knowingly false statements of fact which were material and which fraudulently induced Plaintiff into entering and/or maintaining a business relationship with said defendants.

-15-

102. Furthermore, said defendants knowingly concealed material facts and failed to make disclosures when they had a duty to speak.

103. The representations and concealments were knowingly false and were designed to mislead.

104. Plaintiff relied on the representations to his detriment.

105. By reason of the aforesaid, Plaintiff has been harmed.

106. Defendants' actions are willful wanton and outrageous and justify the award of punitive damages.

## RELIEF REQUESTED

107. By reason of the aforesaid, Plaintiff seeks the following:

(a) An award of actual damages in excess of $75,000 as against all Defendants, jointly and severally;

(b) An award of punitive damages as against all Defendants, jointly and severally;

(c) Disgorgement of all commissions, profits and/or compensation earned by Defendants in the course of their agency with Plaintiff;

(d) A decree piercing the corporate veil as requested;

(e) Attorney's fees, costs, and pre-judgment interest as permitted by law;

(f) Injunctive relief as needed to maintain the status quo and prevent Defendants from undertaking further unlawful and illegal acts; and

(g) Such other relief as may be deemed just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

                                            Respectfully submitted,

                                            **FOX ROTHSCHILD LLP**

                                            /s/Ely Goldin
                                            Ely Goldin, Esq.
                                            Ernest E. Badway, Esq.
                                            75 Eisenhower Parkway, Suite 200
                                            Roseland, New Jersey 07068-1600
                                            (973) 992-4800
                                            EGoldin@foxrothschild.com
                                            - and -
                                            W. Christian Moffitt, Esq.
                                            10 Sentry Parkway, Suite 200
                                            Post Office Box 3001
                                            Blue Bell, Pennsylvania 19422
                                            (610) 397-6509
                                            *Attorneys for Plaintiff*
                                            Protectmax, LLP

Date:  September 27, 2011

LN1 1237535v2 09/27/11