```
 1                        UNITED STATES DISTRICT COURT
                              DISTRICT OF NEW JERSEY
 2

 3   PROTECTMAX, LLP,                    .
                                         .
 4        Plaintiff,                     .
                                         . Case No. 11-cv-05607
 5   vs.                                 .
                                         . Newark, New Jersey
 6   MILMAN, et al.,                     . November 30, 2011
                                         .
 7        Defendants.                    .
                                         .
 8

 9
                              TRANSCRIPT OF HEARING
10                             Settlement Conference
                       BEFORE THE HONORABLE PATTY SHWARTZ
11                       UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13
     For the Plaintiff:       ELY GOLDIN, ESQ.
14                            Fox Rothschild LLP
                              10 Sentry Parkway
15                            Suite 200
                              Post Office Box 3001
16                            Blue Bell, PA 19422
                              (610) 397-6509
17                            Email: Egoldin@foxrothschild.com

18                            Mr. Aleksandr Kouchnir

19

20   For the Defendants:      ANDREW J. BORSEN, ESQ.
                              Gambourg & Borsen, LLC
21                            2185 Lemoine Avenue
                              Fort Lee, NJ 07024
22                            (201) 242-0220
                              Email: Aborsen@rvgab.com
23
                              Mr. Garri Milman
24

25
```

```
 1
 2
    Audio Operator:
 3
    Transcription Service:      KING TRANSCRIPTION SERVICES
 4                               65 Willowbrook Boulevard
                                 Wayne, New Jersey 07470
 5                               (973) 237-6080
 6
 7  Proceedings recorded by electronic sound recording; transcript
    produced by transcription service.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1              (Commencement of proceedings at 5:48 P.M.)

2

3              THE COURT:  We're here in PROTECTMAX versus Milman,
4    Civil No. 11-5607.  May I have an appearance for the
5    plaintiff, please.

6              MR. GOLDIN:  May it please the Court, Ely Goldin
7    from Fox Rothschild on behalf of the plaintiff PROTECTMAX.

8              THE COURT:  And on behalf of the defendants.

9              MR. BORSEN:  Good evening, Your Honor, Andrew
10   Borsen of Gambourg & Borsen on behalf of defendant,
11   Mr. Milman, CNN USA Trading, Svetlana Ploskina, Easy Leasing
12   of Miami, Immigration Services for New Americans, and Fortuna
13   Entertainment Ltd.

14             THE COURT:  Thank you. As everyone is aware, we've
15   been working together since about 3:00, 3:15 tonight.  It's
16   not about quarter to six, and it's been reported to the Court
17   that the parties have reached a resolution.  I know that the
18   representative of the plaintiff primarily speaks Russian.  So
19   counsel, how would you like to proceed to ensure that your
20   client understands the nature of these proceedings and the
21   Court's purpose?

22             MR. GOLDIN:  Your Honor, my client and I have
23   discussed all of the terms that have been agreed upon during
24   the break and before we went on the record.  My client is
25   fully in agreement with them, and I've been authorized to

1  articulate and accept those terms.
2          THE COURT:  My practice generally is -- this is for
3  the benefit of both the clients -- is to ask after the terms
4  are recited on the record, to make sure each of the clients
5  understand the nature of the terms, they've had enough time
6  to speak to their lawyers, and that they understand this is a
7  full and complete resolution of the case.  How do you want me
8  to handle that as it relates to your client?
9          MR. GOLDIN:  If your Your Honor would like to
10 colloquy, I will translate in realtime.
11         THE COURT: Very good.  All right.  Well, why don't
12 we do this.  Why don't we have you, if it's all right, place
13 on the record, the terms of the settlement, and then I'll
14 turn it over to each -- your adversary first and then each of
15 the clients.  So, counsel, go ahead.
16         MR. GOLDIN:  Okay.  Starting with the financial
17 terms, the parties have agreed as follows.  First, the
18 defendants and -- and we'll articulate who they are, shall
19 pay the sum of $375,000 in full and final settlement of all
20 claims asserted by the plaintiffs in this action -- by the
21 plaintiff in this action.  That sum is to be paid as follows.
22 The amount of $25,000 shall be paid within 30 days of the
23 execution of a settlement agreement that will contain among
24 other things mutual general releases.  After that, on a
25 monthly basis for a period of 18 months, the defendants will

 1  pay $3,100.  Following that 18-month period, the payments
 2  shall increase to $4,100, and those shall continue for a
 3  period of 42 months, such that, this is a five-year payout,
 4  and any amount left over at the end of the five-year being
 5  the difference between the 3100 paid over 18 months, the 4100
 6  paid over 42 months, and the $25,000 upfront payment, the
 7  difference between that and the 375 will be a balloon that'll
 8  be due at the end of the five years.
 9          THE COURT:  Okay.
10          MR. GOLDIN:  May I continue?
11          THE COURT:  Please do.
12          MR. GOLDIN:  All right.  If addition, in terms of
13  non-financial terms, payments will be due generally on the
14  first of each month subject to a five-day grace period.
15          MR. BORSEN:  Could we make it 10-day?
16          MR. GOLDIN:  Subject to a 10-day grace period.
17  Upon expiration of the 10-day grace period, if payment has
18  not been tendered, there will be a notice of default and
19  another 10-day opportunity to the cure.
20          The plaintiff will receive a consent judgment in
21  the amount of $454,000, which the plaintiff will hold in
22  escrow and use in the event of an uncured or non-cured
23  default.
24          In terms of additional non-financial terms, the
25  obligations under the settlement agreement will be secured by

 1  a mortgage on Mr. Milman and Mrs. Milman's real estate
 2  located in the Mill Basin section of Brooklyn, New York, and
 3  the mortgage will be in the amount of $454,000, the same as
 4  the consent judgment.  During the repayment term, Mr. Milman
 5  and his spouse shall take no action to impair the collateral,
 6  meaning there'll be no junior liens attached, nor will they
 7  allow Mortgages 1 and 2, which stand ahead of our client, to
 8  increase in value, thereby decreasing the available equity.
 9  The obligations under this agreement will be
10  non-dischargeable under § 727 of the bankruptcy code to the
11  to the extent allowed by law.  And Mr. Milman shall not
12  contest the non-dischargeability of this debt in any
13  bankruptcy proceedings.
14            In addition, we've agreed that the Court shall
15  retain enforcement jurisdiction over this action for as long
16  as the parties have unresolved and continuing obligations to
17  each other under the agreement.
18            Finally, in the event of a default that requires
19  enforcement of the rights under this agreement, including
20  without limitation, the mortgage, the parties have agreed
21  that they will work cooperatively with one another to sell
22  the Mill Basin, Brooklyn, New York, property through a
23  Realtor on a -- in a cooperative fashion such that the real
24  estate is sold as something other than a distressed sale or
25  foreclosure in order to maximize value and maximize the

1  opportunity for distribution, both to the first and second
2  mortgages, to our client, and also to Mr. Milman to the
3  extent that equity exists.
4          And my belief is that covers all of the material
5  terms of this agreement.
6          THE COURT:  Okay.  If I could turn over to defense
7  counsel, is that your understanding of the agreement that's
8  been reached here today?
9          MR. BORSEN:  Your Honor, there are some corrections
10 with this agreement.
11         The first is the 454,000, that will be held in case
12 of default minus any payments made.
13         THE COURT:  Right.
14         MR. GOLDIN:  Agreed.
15         MR. BORSEN:  The other issue that I have is I wrote
16 down that the total settlement is 370,000.  I believe counsel
17 said 375,000.
18         THE COURT:  I heard 370, but I think the agreement
19 is 3, 7, zero.
20         MR. BORSEN:  Right.
21         MR. GOLDIN:  The agreement is 3, 7, zero.  If I
22 said 375, I apologize; I misspoke.
23         MR. BORSEN:  Okay.  Right.  That's -- that's the
24 understanding.  The only thing to make clear for the record,
25 Your Honor, is the only stipulation is the consent judgment

```
 1  will be held against Mr. Milman, not the remaining
 2  defendants.
 3          THE COURT:  I don't know whether or not that term
 4  was discussed.
 5          MR. GOLDIN:  I thought we agreed it was against
 6  Mr. Milman and his spouse so as to prevent entireties
 7  problems.
 8          MR. BORSEN:  Right, to the extent that his
 9  spouse -- right to the extent to prevent the entirety
10  problems, to the extent that she's an owner of the property
11  located at Mr. Milman's property.
12          THE COURT:  Counsel.
13          MR. GOLDIN:  I think we're saying the same thing.
14  The consent judgment will be a judgment that will hold in
15  escrow, and the judgment debtors on the consent judgment will
16  be Mr. Milman and his spouse.
17          MR. BORSEN:  Well, I think there's a
18  differentiation, because in order to prevent the entireties
19  issue, if -- if plaintiffs were to sell the home in Mill
20  Basin, certainly that consent judgment would have to include
21  Mr. Milman's spouse.  However, to the extent that plaintiff
22  seeks pure collection of the debt without selling of the
23  home, we do not agree on his spouse having personal liability
24  in this -- in this case.  Just to the extent that she's
25  securing -- or she's signing the settlement agreement as it
```

1  relates to the house, because she is the record owner of the
2  home alongside Mr. Milman.
3           THE COURT:  Counsel.
4           MR. GOLDIN:  I'm not sure how you can separate the
5  two, be responsible for real estate in the event of a default
6  and not be responsible otherwise.  Their house is the only
7  collateral.
8           THE COURT:  And the consent judgment would operate
9  as lien on the house anyway.
10          MR. GOLDIN:  Yeah, consent judgment --
11          THE COURT:  Assuming the worst, and I don't want to
12 necessarily assume the worst, but assuming the worst --
13          MR. BORSEN:  That is, Your Honor.
14          THE COURT:  -- that's what ends up happening is the
15 consent judgment would end up being a lien on the house, so
16 she could lien -- there would be a lien -- you'd have to cure
17 that lien to sell the house anyway.
18          MR. BORSEN:  Correct.
19          THE COURT:  So what's the difference?
20          MR. BORSEN:  Well, the difference is that assuming
21 that --
22          THE COURT:  If the house is never -- not on the --
23 not available or they sell it or whatever --
24          MR. BORSEN:  Well, assuming that --
25          THE COURT:  -- she would have a personal liability.

```
 1              MR. BORSEN:  Correct, that in the worst-case
 2  scenario.
 3              THE COURT:  So are you looking to hold her
 4  personally liable -- for decide the house.  Assume there was
 5  no house.  Would you be looking to hold her personally
 6  liable?  Or would you be satisfied to have that consent
 7  judgment be against Mr. Milman and all the other corporate
 8  parties.
 9              MR. GOLDIN:  Your Honor, the deal was that it's
10  husband and wife who are settling this case.
11              THE COURT:  Got it.
12              MR. GOLDIN:  That was my understanding of the deal.
13              THE COURT:  Okay.  So the -- from your point of
14  view, you need to have the consent judgment in the names of
15  both of them.
16              MR. GOLDIN:  Yes.
17              THE COURT:  Okay.
18              MR. BORSEN:  Your Honor, that was not the
19  understanding.  The understanding was that she would be
20  liable to the extent that she's the property owner of the
21  home.  We never discussed Mr. Milman's wife as personally
22  liable.
23              THE COURT:  She's a party to this case; right?
24              MR. BORSEN:  She is a party to this case.
25              MR. GOLDIN:  And in settlement discussions, I
```

1  expressly said that both would have to be signatories to the
2  settlement agreement.
3           MR. BORSEN:  And which is fine.  To the extent that
4  you want to enforce the judgment against the house, or you
5  want to sell the house, plaintiffs wants [sic] to sell the
6  house.  But to the extent you seek pure collection from the
7  wife, we're not in agreement to that.  We're -- we discussed
8  it just in terms of the problems with the entirety.
9           MR. GOLDIN:  But entireties is a problem that goes
10 beyond real estate.  Entireties is a problem that protects
11 all assets.  And if there's -- if something happens and the
12 house is destroyed by fire and there's no insurance on it and
13 the collateral vanishes into thin air, then all we would have
14 is a consent judgment against Mr. Milman individually, which
15 we could not use in any way to go after any other assets, and
16 that would frustrate the purpose of the settlement agreement.
17          MR. BORSEN:  May I have a moment to speak with my
18 client?
19          THE COURT:  Sure.  Yup.
20               (Pause in proceedings)
21          MR. BORSEN:  Your Honor, may we approach?
22          THE COURT:  You sure may.  We're going to go off --
23 we'll pause the record.
24               (Recess:  5:59 P.M. to 6:02 P.M.)
25          THE COURT:  All right, counsel, thank you for

1  thinking this outside the box.  Let me hear in light of this
2  concern about the confession of judgment, how we will modify
3  that one term.
4          MR. GOLDIN:  Your Honor, we've agreed as follows.
5  The -- Mr. Milman's spouse, Svetlana Ploskina,
6  P-l-o-s-k-i-n-a, will be a named party on the consent
7  judgment, and she will be a signatory --
8          THE COURT:  You mean settlement agreement?
9          MR. GOLDIN:  Excuse me.  To the -- to the
10 settlement agreement.  She -- and she'll be a signatory to
11 whatever documents are necessary to give plaintiff a properly
12 perfected security interest and lien in the New York real
13 estate.
14         In addition, Mr. Milman and his spouse will waive
15 to the fullest extent possible any protections afforded to
16 them by the laws of entireties, the laws of homestead, or any
17 similar laws in any jurisdiction we may have to enforce this
18 judgment, and they're all allowed to be enforced,
19 notwithstanding the fact that Mr. Milman remains married,
20 such that any assets owned by Mr. Milman that are subject to
21 execution will be subject to execution without any defenses
22 being raised at his entireties property and exempt.  And then
23 finally, Mr. Milman has agreed that during the pendency of
24 this settlement agreement, he shall maintain hazard insurance
25 on the New York real estate.

```
 1              THE COURT:  Okay.  Counsel, is that your
 2   understanding of how that issue's been resolved?
 3              MR. BORSEN:  That is, Your Honor, with the
 4   exception that Ms. Svetlana Ploskina shall not be personally
 5   liable under the settlement agreement, and she'll only be
 6   liable to the extent articulated by counsel with regard to
 7   perfecting security interests in the real estate property and
 8   waiving the issue with entireties.
 9              MR. GOLDIN:  Yes.
10              THE COURT:  And she also can't do anything to
11   compromise the value of the property or impair it or anything
12   like that.
13              MR. BORSEN:  Absolutely correct, Your Honor.
14              MR. GOLDIN:  So, for the sake of clarity, if -- if
15   the New York real estate has to be liquidated, and the
16   proceeds are then used to distribute to the senior mortgage
17   holders, to my client, et cetera, she's liable in that sense
18   that those proceeds are used to satisfy the obligation.
19              MR. BORSEN:  Yes --
20              THE COURT:  Yes.
21              MR. BORSEN:  -- to that extent.  But to the extent
22   she has her own assets, she is not liable for her own
23   personal assets.
24              MR. GOLDIN:  Understood.  But there will be a
25   marital carveout or entireties carveout in event of
```

1   liquidation of the New York -- of the New York property.

2            MR. BORSEN:  Correct.

3            MR. GOLDIN:  And we'll prepare appropriate spousal
4   waivers to be attached to the settlement agreement.

5            THE COURT:  Okay.  Let me ask your client:  Sir, do
6   you understand the nature of the agreement that's been
7   reached?

8            MR. BORSEN:  If I -- if I may have a moment with my
9   client?

10           THE COURT:  Sure.  And I'm going to ask counsel for
11  the plaintiff to do the same thing, confer with his client.

12                  (Pause in proceedings)

13           MR. BORSEN:  Your Honor.

14           THE COURT:  Yes, sir.

15           MR. BORSEN:  If I may, my client has concerns, and
16  I think he would like to address the Court with those
17  concerns.  I think my client is concerned that his wife may
18  have personal liability with regard to this case.  And I
19  explained to my client that his wife does not have personal
20  liability with regard to this case except for to the extent
21  that the house -- she would not -- she would cooperate fully
22  to -- in case of default, to help or assist plaintiff in
23  perfecting his security interest in the home.

24           THE COURT:  Let me see if I can articulate what I
25  understand to be the obligations of your wife.

1            MR. BORSEN:  Thanks.

2            THE COURT:  And I'll ask each of the lawyers to
3    tell me whether I'm articulating it correctly.

4            The first obligation she would have is sign
5    whatever documents are necessary to make clear that she
6    understands that the real estate that you both own is being
7    used to secure this dollar amount, the 3 -- in this case,
8    it's going to be a full amount of 454.  Right?  But you're
9    only obligated to pay 370.  So that's the first thing she's
10   got to do, she's going to have to sign the paperwork.

11           The second thing that she's going to have to do is
12   sign a document that says that she understands that if the
13   real estate is sold, the dollars that have to be used to pay
14   from the sale of the house, are obviously going to have to
15   satisfy the first and second mortgage holders, and then
16   satisfy this debt.  And she can't come back and say that
17   under New York state law or some other state law, that she
18   shouldn't be responsible because she should get her half of
19   the house, hypothetically, because under our -- under this
20   agreement, she would be agreeing that any dollars that she
21   may have independent interest of, she can't claim belong to
22   her as it relates to the sale of the house, that any of the
23   money after the first mortgage is paid and the second
24   security is paid, this gets paid next.  Then whatever's left
25   after that, it's up to you guys to deal with.

```
 1              That's my understanding of the -- of her
 2   obligations.
 3              The final thing is that to the extent there would
 4   be other real property that somehow could be used to satisfy
 5   this debt, that she would not try to argue that some piece of
 6   it is hers and it doesn't belong to the marriage, but a lot
 7   of that is going to be dictated by what the state law is.
 8              But what I've been told by your lawyer during some
 9   of our informal discussions is that this is your family home.
10   Your children live there, you live there, you've lived there
11   since late '90s.  I gather there is no intent for you folks
12   to do something to this house to somehow destroy it or not
13   try to keep it in a good way and keep up with all your
14   obligations because you want to stay in this house.
15              Am I correct about that?  Okay.  Did I explain the
16   obligations of the wife based on plaintiff's --
17              MR. GOLDIN:  You did, Your Honor.
18              MR. BORSEN:  Yes, thank Your Honor.
19              THE COURT:  All right. Sir, do you understand?
20   Does that -- he's nodding his head yes?  We're on the tape,
21   so you have to answer with words.  Does that address the
22   concerns you were expressing to your lawyer?
23              MR. MILMAN:  Yes.
24              THE COURT:  Okay.  Did you have enough time to
25   speak to your lawyer about this case?
```

```
 1              MR. MILMAN:  Yes.
 2              THE COURT:  Do you understand that without this
 3   settlement, you might be obligated to pay more money, expend
 4   more resources on this litigation, or you can win the case
 5   and have to pay nothing, but at a minimum, a settlement gives
 6   you certainty.  Do you understand that?
 7              MR. MILMAN:  Yes.
 8              THE COURT:  Okay.  Do you have any questions that
 9   you want to ask the Court?
10              MR. MILMAN:  No.
11              THE COURT:  Okay.  Counsel, is there anything else
12   you'd like me to inquire of your client before I turn it over
13   to the plaintiff?  On behalf of the defendant?  Do you want
14   me to inquire anything else?
15              MR. BORSEN:  That is all, Your Honor.
16              THE COURT:  Okay.  On behalf of the plaintiff, if
17   you could translate for me, please.
18              MR. GOLDIN:  I will.
19              THE COURT:  Thank you.
20              Have you had a chance to review all of the terms of
21   this settlement with your attorney?
22              MR. GOLDIN:  (Translates.)  Yes.
23              THE COURT:  Do you understand the nature of this
24   settlement?
25              MR. GOLDIN:  (Translates.)  Yes.
```

1             THE COURT:  Do you understand that you could take
2  this case all the way to trial, get more money, less money or
3  no money at all?
4             MR. GOLDIN:  (Translates.)  Yes, I understand.
5             THE COURT:  And you understand that this is a
6  resolution that ends the case?  Even though you're not going
7  to be paid for a total of five years, from the Court's point
8  of view, the case is over?
9             MR. GOLDIN:  (Translates.)  Yes, I understand.
10            THE COURT:  Do you also understand that the only
11 help the Court can give after this point is to enforce the
12 terms of the settlement?
13            MR. GOLDIN:  (Translates.)  Yes, I understand.
14            THE COURT:  Are you satisfied with your assistance
15 of your attorney?
16            MR. GOLDIN:  (Translates.)  Satisfied, satisfied,
17 satisfied.
18            (Translates.)  Yes, I am.
19            THE COURT:  Okay.  Is there anything else you'd
20 like me to inquire of your client about?
21            MR. GOLDIN:  No, not from me, Your Honor.
22            THE COURT:  All right. Gentlemen, then I will
23 report to the United States District Judge this case has been
24 resolved.  Her Honor will enter her form of the 60-day order,
25 which basically gives you an opportunity to pull this all

1  together, but I'm sure it's going to be done faster than 60
2  days, without prejudice to come back before the Court for the
3  purposes of enforcing the settlement.
4           So that will be the Court's order.  So thank you
5  very much time tonight.
6           MR. BORSEN:  Thank you very much, Your Honor.
7           MR. GOLDIN:  Thank you for your time, Your Honor.
8           THE COURT:  Okay.
9            (Conclusion of proceedings at 6:13 P.M.)

```
 1                        Certification
 2        I, SARA L. KERN, Transcriptionist, do hereby certify
 3   that the 20 pages contained herein constitute a full, true,
 4   and accurate transcript from the official electronic
 5   recording of the proceedings had in the above-entitled
 6   matter; that research was performed on the spelling of proper
 7   names and utilizing the information provided, but that in
 8   many cases the spellings were educated guesses; that the
 9   transcript was prepared by me or under my direction and was
10   done to the best of my skill and ability.
11         I further certify that I am in no way related to any of
12   the parties hereto nor am I in any way interested in the
13   outcome hereof.
14
15
16
17
18   S/ Sara L. Kern                              March 7, 2012
19   Signature of Approved Transcriber                Date
20
21
     Sara L. Kern, CET**D-338
22   King Transcription Services
     65 Willowbrook Boulevard
23   Wayne, NJ 07470
     (973) 237-6080
24
25
```